23-6599
*United States v. Estevez*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of September, two thousand twenty-four.

PRESENT:

> DENNY CHIN,
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
>     *Circuit Judges*.

———————————————————————

UNITED STATES OF AMERICA,

       *Appellee*,

      v.                                       No. 23-6599

VICENTE ESTEVEZ,

       *Defendant-Appellant*,

FERNANDO CAMEJO, a.k.a. El Senor,
HEIVER RUIZ-PATOZANO, LUIS ENRIQUE
GONZALEZ-MALDONADO, a.k.a. El Pelao,
ALEXANDER ALMONTE-MACEA,

*Defendants.*

_____

**For Defendant-Appellant:** Avraham C. Moskowitz, Christopher R. Neff, Moskowitz Colson Ginsberg & Schulman, LLP, New York, NY.

**For Appellee:** Ashley C. Nicolas, Jun Xiang, Frank J. Balsamello, David Abramowicz, Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (John G. Koeltl, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 1, 2023 judgment of the district court is **AFFIRMED**.

Vicente Estevez appeals from a judgment of conviction, following a jury trial, for conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). The

2

district court sentenced Estevez to 222 months' imprisonment to be followed by five years' supervised release. On appeal, Estevez argues that his below-Guidelines sentence was procedurally unreasonable because the district court incorrectly concluded that he was a "manager or supervisor" of criminal activity involving five or more people. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review the procedural reasonableness of a sentence for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007). "A sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [section] 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020) (internal quotation marks omitted).

Under the Sentencing Guidelines, a defendant's offense level may be increased by three levels if "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). A defendant is properly

3

considered a manager or supervisor "if he exercised some degree of control over others involved in the commission of the offense or played a significant role in the decision to recruit or to supervise lower-level participants." *United States v. Blount*, 291 F.3d 201, 217 (2d Cir. 2002) (alterations and internal quotation marks omitted). The enhancement applies even if the defendant managed or supervised only one other participant in the conspiracy, *see United States v. Al-Sadawi*, 432 F.3d 419, 427 (2d Cir. 2005), and, of course, "more than one person at more than one level of a conspiracy may act as a supervisor," *United States v. Garcia*, 413 F.3d 201, 224 (2d Cir. 2005).

The government must prove by a preponderance of the evidence that the defendant's conduct meets the requirements of the enhancement. *See United States v. Molina*, 356 F.3d 269, 274 (2d Cir. 2004). Although the district court must make specific factual findings to support the application of the enhancement, it may satisfy that obligation by explicitly adopting "the factual findings set forth in the presentence report [(the 'PSR')]." *Id.* at 275; *see also United States v. Ware*, 577 F.3d 442, 452 (2d Cir. 2009) ("[A]doption of the PSR does not suffice if the PSR itself does not state enough facts to permit meaningful appellate review."). A district court's application of an aggravating-role enhancement that presents a primarily

legal question on appeal is reviewed *de novo*, while a primarily factual determination is reviewed under the clearly erroneous standard. *See United States v. Gotti*, 459 F.3d 296, 349 (2d Cir. 2006).

Estevez does not dispute that the criminal activity involved five or more participants. Instead, he argues that it was clearly erroneous for the district court to conclude that he was a manager or supervisor. Specifically, Estevez asserts that there was insufficient evidence from which to find that Ingrid Torres-Laboy was a participant in the conspiracy and that he exercised authority over her. But that argument is belied by the trial testimony, which readily supports the inference that Torres-Laboy was an active participant and that Estevez "exercise[d] some degree of control over [her and] others involved in the commission of the offense." *Blount*, 291 F.3d at 217.

First, the record evidence amply demonstrated that Torres-Laboy was a participant in the criminal activity. A "participant" must be "criminally responsible for the commission of the offense," U.S.S.G. § 3B1.1 cmt. n.1, but "need not have been convicted," *id.*, or even charged, *see Al-Sadawi*, 432 F.3d at 426–27. The trial testimony reveals that conspirators used Torres-Laboy's house as a base to coordinate the delivery of cash for purchasing drugs from undercover agents

5

posing as representatives of Colombian cocaine suppliers. *See* Estevez App'x at 309–19. It also shows that Torres-Laboy was present when the conspirators discussed the delivery of the money, *id.* at 309–13, and that she drove Estevez to deliver the drug money to the undercover agents the next day, *id.* at 326–27. This evidence was more than sufficient for the district court to conclude by a preponderance of the evidence that she was a knowing participant in this drug-trafficking conspiracy.

Second, the evidence amply demonstrates that Estevez exercised some degree of control over Torres-Laboy and others during the course of the conspiracy. For example, when one of the co-conspirators suggested that Torres-Laboy come inside while Estevez was counting the drug money, Estevez overruled that co-conspirator and directed that Torres-Laboy was to "stay in the vehicle." *Id.* at 237. The evidence also shows that Estevez's conspirators identified him as "the boss," *id.* at 222, 225, 227, and that Estevez oversaw the collection of the drug money, coordinated with the individuals bringing the cash, and updated the leader of the conspiracy, *see id.* at 309–13, who was based in Puerto Rico, *see id.* at 187. On the way to deliver the cash, Estevez limited his own exposure by driving in a separate vehicle. As an expert witness explained at trial, the

6

individuals overseeing a drug transaction will typically follow behind in a separate vehicle so that they can distance themselves from the money while still keeping watch over the lower-level conspirators who are transporting the cash. *See* Dist. Ct. Doc. No. 152 at 179. Likewise, the undercover agent who posed as one of the Colombian suppliers concluded, based on twenty-six years of experience in which he "negotiated many drug transactions," that Estevez was "in the . . . hierarchy higher" than the other participants he observed due to "his actions staying at a distance, only speaking when needing to, and the fact that he would be coming up to count the money." Estevez App'x at 270. Based on this evidence, the district court did not clearly err in applying the three-level enhancement for being a manager or supervisor of the criminal activity.

Equally unpersuasive is Estevez's argument that the district court did not make adequate factual findings on the record to support imposition of the aggravating-role enhancement. Even if it could be argued that the district court's supervisory role "findings were not as precise as they might have been, we have recognized that district courts have some latitude" when articulating "the *reasons* for the finding." *United States v. Persico*, 164 F.3d 796, 804 (2d Cir. 1999). Indeed, a district court need only offer "some explanation as to the evidentiary basis for its

7

view," *United States v. Stevens*, 985 F.2d 1175, 1184–85 (2d Cir. 1993), and may "adopt[] the factual findings set forth in the [PSR]," *United States v. Carter*, 489 F.3d 528, 539 (2d Cir. 2007).

The district court cleared that bar here. At sentencing, the district court explained that Estevez "supervised Torres-Laboy and gave directions to her. She was his driver and was to remain in the car while he was overseeing the counting of the money." Estevez App'x at 449. The district court also adopted the factual findings of the PSR, *see id.* at 469, which noted that Estevez "directed Torres-Laboy" and "organized the finances that were to purchase the drugs." PSR ¶¶ 27–31, 36. Even if the district court could have made more detailed findings, "[t]he court's statement was sufficient, in light of the trial record," which amply demonstrated that Estevez was a manager or supervisor in this drug-trafficking conspiracy. *United States v. Flores*, 945 F.3d 687, 722 (2d Cir. 2019). The district court's explanation of its factual findings was therefore sufficient "to permit meaningful appellate review," which is all that is required. *Ware*, 577 F.3d at 452.

\* \* \*

We have considered Estevez's remaining arguments and found them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court